# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| L&T FASHION, INC., <br><br> v. <br><br> BEST ITEMS INTERNATIONAL, INC., et al. <br><br> Defendant. | Civil Action No. 15-cv-4039 (PGS) <br><br> MEMORANDUM |

On July 17, 2018, a one day bench trial was conducted on this matter. The Court has jurisdiction in this case based on diversity of citizenship as Plaintiff L & T Fashion, Inc. (L&T) is incorporated in the State of Florida, Best Items International, Inc. ("Best Items") is incorporated in New Jersey, and Textiles Met, A.A., DE C.V. ("Textiles Met") is incorporated in Mexico. The amount in controversy is approximately $1.8 million. In addition to this trial, there is a pending motion for default judgment against Textiles Met (ECF No. 51). The motion will be addressed separately.

I.

At a bench trial, the Court has three roles. First, as trier of fact, the Court's duty is to decide the facts from the evidence that was heard and seen in court during the trial. The second duty is to apply the law to the facts. Lastly, the Court must clearly explain the facts and the legal principles underpinning its decision.

As a jury is instructed, the Court performed its duties fairly and impartially, and it considered all of the evidence presented and used common sense, in light of everyday experience

with people and events to determine the credible facts. As such, the Court gave the evidence whatever weight it believed it deserved. See Third Circuit Model Jury Charge § 1.5.

Since this is a civil case, L&T Fashions, the Plaintiff, has the burden of proving its case by the preponderance of the evidence against Best Items. That is, Plaintiff must show its claims are more likely so than not so. See, Third Circuit Model Jury Charge §1.10. If Plaintiff fails to meet this burden, the verdict must be for defendant. Id. In determining what has been proven by the preponderance of evidence, the Court considered the testimony of the sole witness (A.V. Ramakrishna, President of L&T Fashions), and the many documents submitted into evidence by L&T.

In this case, one of the Court's chief functions was to assess the credibility of the testimony of Mr. Ramakrishna. To do so, the Court considered a number of factors including:

(1) the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

(2) the quality of the witness's understanding and memory;

(3) the witness's manner while testifying;

(4) whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

(5) whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

(6) how reasonable the witness's testimony is when considered in the light of other evidence that you believe; and

(7) any other factors that bear on believability.

Third Circuit Model Jury Charge §1.7.

In that assessment, Mr. Ramakrishna's testimony was credible in part. However, some of his testimony was exaggerated, especially as to the amount of losses associated with Best Items. In

addition, the exhibits entered into evidence were not adequately explained nor related precisely to Ramakrishna's testimony. When assessing credibility, the trier of fact may accept all or part of the witness's testimony as credible. A portion, but not all, of Ramakrishna's testimony was credible. This credibility assessment is explained in the following statement of facts and analysis.

II.

Although Plaintiff presents this case as a simple book account, Defendant Best Items argues that there was no contractual relationship between L&T and Best Items because there was no consideration between Best Items and L&T. Defendant's counsel argued in his letter brief:

> The parties appeared for trial on July 17, 2018 before Your Honor. Plaintiff contracted with Textiles Met for the sale of goods. Textiles Met is owned by Jimmy Abadi. In the midst of the professional relationship, Plaintiff required that it deal with a company based in the United States or else it would cease all business with Textiles Met. Therefore, Best Items agreed that all invoices should be addressed to it. Best Items is owned by David Abadi. The only connection between Best Items and Textiles Met is that the owner of Best Items is the father of the owner of Textiles Met. These two companies are wholly separate and apart from each other and do not economically benefit from one another. The original contract for the sale of goods was between Plaintiff and Textiles Met. The goods have always been purchased by Textiles Met and were delivered to Textiles Met.
>
> It is Defendant's position that the Plaintiff has no claim against it for unpaid goods purchased and delivered to Textiles Met because Plaintiff gave no consideration to Best Items which is required for the existence of a valid contract. Plaintiff claims that the consideration given to Best Items is that the contract benefits , the son of the owner of Best Items . . .
>
> * * *
>
> Love and affection, unaccompanied by a pecuniary or material benefit, will not constitute sufficient consideration to support a contract or an action to redress its breach. *In re Kirschenbaum's Estate*, 44 N.J. Super. 391, 400 (App. Div. 1957).

At trial, the issues were twofold: (1) whether there was any consideration between L&T and Best Items sufficient to substantiate a breach of contract claim; and (2) whether there was sufficient evidence to prove damages of approximately $1,885,000 by a preponderance of the evidence.

III.

Before setting forth the facts, the Court reviewed the matter to determine if there was consideration between L&T and Best Items to show a breach of contract[1]. Although there was no jury, the Court used the Model Civil Jury Charge § 4.10(c) and (d) (Existence of a Legally Enforceable Contract) as approved by the New Jersey courts, to guide its deliberations. The Model Civil Jury Charge sets forth elements that the Plaintiff must prove by a preponderance of the evidence to prevail. This specific charge was employed because it explains the element of consideration which defendant argues has not been proven. The charge reads:

4.10 BILATERAL CONTRACTS

C. EXISTENCE OF A LEGALLY ENFORCEABLE CONTRACT (Approved 5/98)

A contract is a legally enforceable agreement to do or not to do something.

Plaintiff claims that [party] and [party] entered into a contract to [explain terms alleged]. The defendant claims [explain terms alleged]. To establish that this contract existed, plaintiff must prove the following:

1. Meeting of the minds — the parties reached an agreement to (do what is alleged).

2. Offer and acceptance — one party communicated a willingness to enter into the agreement and the other party gave some outward indication that the agreement was accepted.

3. Consideration — each party gave or promised something of value to the other.

---

[1] New Jersey law was applied since neither party objected to same.

4.  Certainty — the terms of the agreement were reasonably certain.

I will now explain these requirements in greater detail.

1.  Meeting of the Minds:

    For the parties to reach an agreement, they must have a meeting of the minds on the material terms. To have a meeting of the minds, both parties must understand what each is agreeing to do or not to do. The contract cannot be based upon the secret or hidden intention or understanding of one party.

2.  Offer and Acceptance:

    An offer occurs when one party communicates to another a willingness to enter into a contract and does so under circumstances justify the other party's understanding that if the offer is accepted, an agreement would result. An offer must be reasonably clear, definite and certain in all its essential terms.

    An acceptance occurs when a party shows intent to agree to an offer. The acceptance may be made by words or conduct. It must be made before the offer is withdrawn or lapses, and it must match the terms of the offer exactly. A proposal to accept an offer on any different terms is not an acceptance of the original offer. If any new or different terms are proposed in response to the offer, the response is not an acceptance but rather a counter-offer. A counter-offer is a new offer by the party making that proposal. The new offer must in turn be agreed to by the party who made the original offer for there to be an acceptance.

3.  Consideration:

    Consideration is something of value. Thus for there to be a sufficient exchange of consideration, something of value must be bargained for. Consideration can be a benefit to one party or loss of a benefit to the other party. Its actual value in money terms is not important. But each party must have given or promised something of value to the other party. Where the contract provides for an exchange of promises, each promise is consideration for the other promise.

4.  Certainty:

    To satisfy the certainty requirement, the plaintiff must demonstrate that the terms were sufficiently clear so that what each party was to do or not to do could be determined with reasonable certainty.1 In other words, the parties must be able to determine what it is that the contract requires them to do or not to do and to determine later whether those obligations have been satisfied.

4.10    BILATERAL CONTRACTS

D.    FORM OF CONTRACT (Approved 5/98)

There is no requirement that a contract be in writing, that it be dated, or that it be signed by either party.1 It can be entirely oral, or it can be partly oral and partly in writing.

A contract can be made of several different documents if the parties intended that their agreement would include the various documents together.

IV.

L&T Fashions processes textiles manufactured in Asia and distributes about 20% of the textiles in the United States, and about 80% in Latin American countries. (T. 8, 21-25). Mr. Ramakrishna has been in that type of business since 1975. (T. 9, 7). In this case, L&T was selling apparel fabrics, shirtings, and ladies dress materials (suitings) to Textiles Met, a distributor in Mexico. (T. 10 - 22).

In 2010, the business relationship between L&T Fashions and Textile Met began. Evidently, in that year, Ramakrishna of L&T contacted Jimmie Abadi of Textiles Met, and as a result, L&T sold shirtings and suitings to Textiles Met. (T. 10, 20 – T. 11, 15). Thereafter, Ramakrishna met with David Abadi (father of Jimmie, and President of Best Items). Ramakrishna alleges that David, on behalf of Best Items, either purchased or agreed to pay for the textiles forwarded to Textile Met. (T. 11, 18-20).

More specifically, Mr. Ramakrishna testified that he and his partner met with David Abadi "at the end of 2013" in order to increase the volume of business through the introduction of suede finishing products, and to obtain better security for the payment of textiles shipped to Textiles Met. (T. 26, 5-13). From that testimony, I construed the term "at the end of 2013" to mean a conversation at the meeting that occurred in mid-December, 2013 ("mid-December 2013

meeting"). As trier of fact, I accepted that date as the commencement of the relationship between Best Items and L&T. Notably, Mr. Ramakrishna never testified that Best Items agreed to pay for textiles shipped before that date.

With regard to that mid-December 2013 meeting, Ramakrishna testified that he and his partner discussed with David Abati more safeguards to reduce the risk of non-payment for the textiles shipped to Textiles Met. Ramakrishna requested that David Abati guarantee the payments of the pro forma (invoices) of Textiles Met. Ramakrishna acknowledged that David declined to do so. (T. 26, 14-20). In light of same, Ramakrishna indicated that the gist of the conversation was that it is more favorable and more preferable to bill a company organized in the United States rather than a company incorporated in another country such as Textiles Met which was incorporated in Mexico. Ramakrishna advised David that L&T could not continue to undertake the business with Textiles Met unless it was through a company organized in the United States. (T. 26, 21 – T. 27, 3). After that conversation, L&T commenced billing Best Item for textiles shipped to Textiles Met. (T. 27, 6-7). The testimony was ambiguous on this point. Ramakrishna testified:

> So in my head and in my partner's head he said you're giving open credit, at least it's a little bit safer to invoice a U.S. company rather than give open credit to a Mexican company, because we were thinking if something goes wrong then at least we are in this land USA, we can at least try to get some justice, try to get our payments or something like that. So I told David otherwise I can't do this business.
>
> So he didn't give me anything in writing, but we continued -- we started invoicing around that time end of 2013, 2014. All the invoices were for Best Items, but the goods were shipped to Textiles Met in Mexico.

(T. 26, 1 – T. 27, 7).

Ramakrishna further explained the relationship between L&T, Best Items and Textiles Met.

> A. To be honest, you know, David when he started interacting with me and buying this suede and other things, he was Textiles Met also, he was the — he was the top guy in the whole organization because he's the founder, and Jimmie is dealing with me and only David was doing it. So when he's doing this business and then I tell him I need guaranties, he don't want to give so I have to — I said I have to invoice on a USA company. So he had Best Items, so we started shipping to — invoicing Best Items and shipping the goods to Textiles Met. But in my head or in anybody's head it's like the same people.
>
> Q. Fair Enough.
>
> A. Same family

Ramakrishna testified that Best Items never objected to a bill, but there is nothing in writing. (T. 29, 18-25).

On cross examination, Mr. Ramakrishna acknowledged that (1) neither David nor Jimmie advised him that David was the owner of either Textiles Met or Best Items; nor were there any such writings introduced into evidence (T. 91, 2-12); (2) all of the goods were shipped to Textiles Met in Mexico (T. 93, 5-9); (3) there were no guarantees provided by either Textiles Met or Best Items (T. 93, 11-14); and (4) there were no written contracts between the parties. (T. 94, 22). On the other hand, there were many e-mails between Ramakrishna and David Abadi of Best Items to demonstrate Best Items consideration. They include, but are not limited to, the following:

\* Exhibit P6-10 email from Ramakrishna to David Abadi attaching invoice IS60-14 to Best Items;

\* Exhibit P6-11 email from Ramakrishna to David Abadi changing invoice from Textile Met to Best Items. Attached was one invoice number 1558-14;

* Exhibit P6-13 email from Ramakrishna to David Abadi and Jimmy Abadi confirming a meeting in Mexico on February 11, 2014;

* Exhibit P6-14 email from David Abadi to Ramakrishna dated February 10, 2014 regarding "Ram Program 2014" and attaching a list of suede products;

* Exhibit P6-17 email from Ramakrishna to David Abadi confirming the understandings reached at the February 11, 2014 meeting;

* Exhibit P6-19 email from Ramakrishna to David Abadi confirming a received sales order (LT 8338);

* Exhibit P6-20 email from Ramakrishna to David Abadi revising a sales order (LT 8349);

* Exhibit P6-22 email from Ramakrishna to David Abadi concerning a pending document update;

* Exhibit P6-24 email from Ramakrishna to David Abadi dated February 28, 2014 requesting that he confirm two containers of suede; and lastly

* Exhibit P7-1 email from Ramakrishna to David Abadi regarding amounts owed from Best Items and Textiles Met. Ramakrishna was attempting to determine which entity should be billed on each invoice.

Most notably, there is nothing in any of these exhibits between David Abadi and Ramakrishna indicating that Best Items is not the bona fide purchaser, or that Best Item's involvement was only due to David's familial interest in his son, Jimmy. To the contrary, David Abadi of Best Items was fully engaged in the transactions in the winter and spring of 2014.

In addition to the above, there is a letter from the auditors of L&T (Talisadvisory) dated March 13, 2014 to Best Items wherein David Abadi acknowledged and signed that as of February 28, 2014 Best Items owed L&T the amount of $743,316.98 (Auditor's Letter) (Exhibit P-8)[2].

Overall, the exhibits plus the Auditor's Letter demonstrate by the preponderance of the evidence that for a period of time from mid-December, 2013 through July, 2014, Best Items and

---

[2] At trial, there was little or no testimony as to how that balance was determined; but at a minimum, the document confirms that Best Items acknowledged its contractual relationship with L&T as of February 28, 2014.

L&T had a contractual relationship. Moreover, even though Ramakrishna noted the father/son relationship between David and Jimmy in his testimony (T. 29, 18-25), there was no evidence that David communicated same specifically to Ramakrishna that his interaction with L&T was due solely to a familial relationship. The emails and the fact that the parties met in Mexico show otherwise. In short, here the consideration was that L&T shipped textiles, and Best Items agreed to pay. Hence, Plaintiff has proven by a preponderance of the evidence that there was a contract supported by consideration.

V.

Having established a breach of contract, the Court proceeded to determine damages. Generally, a plaintiff may recover "such loses as may fairly be considered to have arisen from defendant's breach of contract." N.J. Model Civil Jury Charge 8.45. In part, the cited charge reads:

> A plaintiff who is awarded a verdict for breach of contract is entitled to compensatory damages for such losses as may fairly be considered to have arisen naturally from the defendant's breach of contract. Alternatively, plaintiff may be entitled to such damages as may reasonably be supposed to have been contemplated by both parties, at the time they made the contract, as the probable result of the breach of such contract.
>
> Compensatory damages for breach of contract are designed under the law to place the injured party in as good a monetary position as he/she would have enjoyed if the contract had been performed as promised. What that position is depends upon what the parties reasonably expected at the time they made the contract. The defendant is not liable for a loss that the parties did not have reason to foresee as a probable result of any breach. While the loss must be a reasonably certain consequence of the breach, the exact amount of the loss need not be certain

As noted above, the contract period was determined, and then I calculated the loss during that period of time. More specifically, the contractual relationship between L&T and Best Items

commenced in mid-December, 2013 and lasted through July, 2014. Parenthetically, Ramakrishna testified that communications between him and David of Best Items occurred thorough May 2014 (T. 23, 8-12), but later he revised those dates to June or July, 2014. (T. 29, 5). Without evidence to the contrary by Best Items, the Court accepts the July, 2014 date as when the contractual relationship between L&T and Best Items ended. Next the Court analyzes the summary chart (Exhibit P-1) against the back up documents (Exhibit P-2)[3] to determine the amount due during the contractual period (mid-December 2013 – July 2014).

The summary chart of the amount owed and back-up documents were admitted into evidence (T4, 13-7, 12). The documents were organized by a summary chart (Exhibit P-1) that lists all the invoices raised on Best Items "for goods supplied to Textiles Met. . ." (T. 20, 7-8). According to Exhibit P-1, the total amount owed is $1,885,208.43. The back-up documents to support the summary chart were referred to as pro forma invoices. (T. 21, 11-20) (Exhibit P-2). According to Ramakrishna, a pro forma is produced "once we fix the item and the product and the price then you send the proforma to the customer and that shows. . . what is being ordered." (T. 21, 17-20). There was never a purchase order received from Textiles Met or Best Items (T. 21, 21-25); but sometimes "the salesperson at Textile Met may sign the pro forma and send it back." (T. 22, 10-15). The pro formas were never signed by Jimmie or David Abadi. (T. 22, 18-19). According to Ramakrishna, David Abadi of Best Items was never involved with pro forma invoices. (T. 23, 1-3). Applying Ramakrishna's testimony to Exhibits P-1 and P-2 gives rise to factual issues as to whether Best Items ever agreed to pay for textiles forwarded to Textiles Met prior to the mid-December 2013 meeting.

---

[3] Exhibit P-2 in a series of invoices bates stamped Lt5-LT 51.

More precisely, Ramakrishna explained Exhibit P-2 as the pro forma which billed Best Items for textiles that were shipped to IE Soliciones, a customer broker of Textiles Met located in Mexico (T. 24, 17-21) and the shipment was made to Textiles Met (T. 25, 20-21). Ramakrishna testified that the amount billed became due 150 days (five months) after the ship date. (T. 34, 2-1). So on Exhibit P-2, the ship date was September 27, 2013 and the amount became due on February 26, 2014. As trier of fact, there is no evidence that David Abadi of Best Items agreed to pay any pro forma or invoice negotiated prior to the mid-December 2013 meeting. As such, that amount under that pro forma (Exhibit P-2, LT4) ($107,817.56) is not due from Best Items. Similarly, Exhibit P-2, LT7 has a ship date of November 15, 2013 and the bill was due to be paid by April 14, 2014. Since negotiations obviously occurred prior to mid-December, 2013 meeting, that amount ($75,508.52) is not due from Best Items either.

Deducting those two pro formas ($183,326.08) from the total amount alleged to be owed ($1,883,203.43) as indicated on P-1, the total amount found to be due and owing is $1,701,882.35.

There are two other documents (Exhibit P-8 and Exhibit P-4) admitted into evidence which may mitigate the amount due ($1,701,882.35). Exhibit P-8 is the Auditor's Letter wherein David Abadi signed an acknowledgment at the bottom of the letter that as of February 28, 2014, Best Items owed L&T $743,316.98. There was little stated about that document during the trial except in the facts stipulated by the parties where it states:

> On March 24, 2014, the manager of Best Items signed on behalf of both Best Items and Textiles Met letter statements that purport to confirm the debts that they owed to L&T at the time. (Exhibit P-8).

As trier of fact, I did not accept that $743,316.98 was due on February 28, 2014 because the testimony of Ramakrishna regarding Exhibits P-1 and P-2 was different. As explained above, Exhibit P-1 and P-2 show that the initial pro forma were for textiles shipped on September 27, 2013 and November 15, 2013 respectively. Accordingly, only the initial pro forma ($707,817.56) became due before the February 28, 2014. As such, Exhibit P-8 is not consistent with Exhibit P-1 and Exhibit P-2. Accordingly, the Court accepts the Auditor's Letter as one that demonstrates a contractual relationship between L&T and Best Items as it is signed by David Abadi on behalf of Best Items; but L&T has failed to prove the amount stated in the Auditor's Letter was accurate as of February 28, 2014 by the preponderance of the evidence.

Turning to Exhibit P-4, it is a chart of all transactions from all dates for L&T Fashions, Inc. (T. 38, 6-39,6). Ramakrishna characterizes Exhibit P-4 as document prepared by David Abadi and it sets forth bills forwarded by L&T and payments made by Best Items. (T. 38, 18-23). It sets forth the following information:

All transactions from All dates for L&T FASHIONS INC

| Date | Type | No. | Invoice | Payments |
|---|---|---|---|---|
| 6/12/14 | Payment | | | 6,075.63 |
| 4/24/14 | Bill | 1545/46/49 | 78,736.33 | |
| 4/9/14 | Bill | 1588-14 | 6,075.63 | |
| 4/9/14 | Bill | 1588-14 | 12,103.00 | |
| 3/14/14 | Payment | | | 12,103.00 |
| 2/13/14 | Payment | | | 50,000.00 |
| 2/13/14 | Payment | | | 50,000.00 |
| 1/30/14 | Bill | 1546-13 | 68,268.48 | |
| 1/30/14 | Bill | 1545-13 | 5,783.76 | |
| 1/30/14 | Payment | | | 40,000.00 |
| 1/21/14 | Payment | | | 25,000.00 |
| 1/10/14 | Payment | | | 55,000.00 |
| 1/2/14 | Payment | | | 50,000.00 |
| 1/2/14 | Payment | | | 30,000.00 |
| 12/15/13 | Credit | | | 42,047.29 |
| 9/27/13 | Bill | 1511-13 | 124,571.70 | |
| 9/25/13 | Bill | 1512-1513 | 52,107.66 | |
| 4/12/13 | Payment | | | 30,000.00 |
| 3/1/13 | Payment | | | 25,000.00 |
| 10/12/12 | Payment | | | 19,947.20 |
| 9/5/12 | Bill | | 19,947.20 | |
| 6/20/12 | Payment | | | 25,000.00 |
| 5/31/12 | General Journal | | 86,631.60 | |
| | | | $ 454,225.36 | $ 460,173.12   $ (5,947.76) |

According to Exhibit P-4, the L&T invoices totaled $454,225.36 and Best Items paid $460,173.12. In order to distinguish L&T accounting of the amount owed from this Exhibit, Ramakrishna indicated that all the amounts paid were always late, and as a result, L&T applied any amount paid by defendants against "the oldest amount due." (T. 39, 5-6). As trier of fact, L&T has not shown by the preponderance of the evidence that Best Items agreed to pay for goods shipped prior to the mid-December meeting. Therefore, since Ramakrishna did not dispute the amount of the payment set forth in Exhibit P-4, I applied the amount paid in Exhibit

P-4 during the contract period (mid-December, 2013 through July, 2014) against the amount due.

More specifically:

| | |
|---|---|
| June 12, 2014 payment | $6,075.63 |
| March 14, 2014 payment | $12,103.00 |
| February 13, 2014 payment | $50,000.00 |
| February 13, 2014 payment | $50,000.00 |
| January 30, 2014 payment | $40,000.00 |
| January 21, 2014 payment | $25,000.00 |
| January 10, 2014 payment | $55,000.00 |
| January 2, 2014 payment | $50,000.00 |
| January 2, 2014 payment | $30,000.00 |
| December 15, 2013 (credit) | $42,047.29 |
| | $360,225.92 |

In order to determine the actual loss, the Court subtracted the amount of payments from Best Items from the gross amount alleged to be owed. That is, for the contract period, the amount due is $1,701,882.35 less the payments during the contract period ($360,225.92) leaving a balance of $1,341,656.43 owed to L&T from Best Items.

In conclusion, the amount of damages proven by a preponderance of the evidence by L&T is $1,341,656.43. An appropriate judgment shall be entered.

2/15/19

_____
PETER G. SHERIDAN, U.S.D.J.